UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE E. JACOBS,<br><br>            Plaintiff,<br><br>     v.<br><br>CSR REPS, et al.,<br><br>            Defendants. | **CASE No. 1:16-cv-00791-DAD-MJS (PC)**<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 1)**<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. His complaint is before the Court for screening.

**I.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court

determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.     Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**III.    Plaintiff's Allegations**

Plaintiff is incarcerated at California State Prison – Corcoran, where the acts giving rise to his complaint occurred. He names the following defendants in their individual and official capacities: (1) "CSR Reps," (2) "CP-R Reps," (3) Warden Dave Davey, and (4) Sergeant Alvarado.

2

Plaintiff's allegations may be summarized essentially as follows:

Beginning in 2012, Corcoran officials began to make false allegations that Plaintiff had safety and security concerns.[1] Since that time, Plaintiff has continually denied that he has such concerns.

On March 29, 2015, Warden Davey agreed that the allegations were invalid and released Plaintiff to the general population pending transfer to another institution. Plaintiff successfully programmed on the general population yard for several months. During that time, Plaintiff was denied transfer by CSR Reps and CP-R Reps based on the "bogus" allegations of safety concerns.

Something unspecified occurred on May 6, 2015. As a result, CSR Reps and CP-R Reps received additional "bogus" information regarding Plaintiff's safety concerns.

Plaintiff was injured on November 13, 2015. He does not explain the mechanism of his injury, but states that his injury would not have occurred were it not for the bogus allegations that prevented his transfer. He states that Defendants tried to force him to accuse another inmate as his attacker but Plaintiff refused. On November 14, 2015, Plaintiff was placed on Administrative Segregation ("AdSeg") status by Sergeant Alvarado. However, Plaintiff was not immediately placed in the AdSeg unit, apparently because he was hospitalized. Plaintiff's arm was broken and was not operated on for a month. Plaintiff was given inadequate pain medication.

On March 11, 2016, Plaintiff was discharged from the hospital pending transfer to an outpatient medical institution for treatment of his right arm. Defendants were aware of Plaintiff's medical condition. However, Defendants placed Plaintiff in AdSeg due to a report from Alvarado that Plaintiff had safety concerns with the "Bloods" security threat group. This information was false. Plaintiff was denied medical treatment. "Prison personnel" became verbally aggressive and refused to provide ADA accommodations for Plaintiff's arm.

---

[1] The events of 2012 do not appear to be the basis for Plaintiff's complaint, but rather only background to the instant allegations.

On May 3, 2016, Plaintiff was taken to an Institutional Classification Committee ("ICC") hearing. The Committee confirmed that the allegations of security concerns were invalid. The ICC determined to release Plaintiff to the general population pending an accelerated transfer to another institution for treatment of Plaintiff's mental health conditions.

On May 4, 2016, Plaintiff filed a 602 challenging the ICCs decision not to send Plaintiff to a medical prison for treatment of his arm. He states that the prisons the ICC indicated it would transfer him to are violent and would subject him to risk of further injury to his arm. He alleges that such transfer violates various provisions of the California Code of Regulations.

Thereafter, Defendants CSR Reps and CP-R Reps cancelled the accelerated transfer. Plaintiff believes this was done in retaliation for Plaintiff filing a 602. Plaintiff was told by a Correctional Counselor II that Defendants relied on false information from May 6, 2015, when Plaintiff was housed in the general population. Plaintiff was told that he could not be transferred until IGI investigators filed a closure statement.

At the time of filing his complaint, Plaintiff remained in solitary confinement. As a result, he has been unable to see his family. He also alleges that such confinement violates the "Coleman Act." He states that his continued placement in solitary generates suspicion amongst other prisoners that puts Plaintiff's life, and his family members' lives, in danger.

On May 16, 2016, Plaintiff received notice of a computerized data breach that compromised Plaintiff's personal information and health information when a CDCR laptop was stolen. He fears that such information in the wrong hands will lead to a "hit" on his family.

Plaintiff claims violation of his First, Eight, and Fourteenth Amendment rights and Article 5 of the California Constitution. He claims that Warden Davey and "the hiring authority" failed to train their designees and turned a blind eye to violations. He seeks release from solitary confinement and money damages.

**IV.    Analysis**

    **A.    Doe Defendants**

Plaintiff lists unnamed CSR Reps and CP-R Reps as Defendants. The Court construes this as an attempt to name individual defendants as Does.

The use of Doe defendants generally is disfavored. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). Nevertheless, under certain circumstances, Plaintiff may, be given the opportunity to identify unknown defendants through discovery. Id. Before Plaintiff may engage in discovery as to the unknown defendants, he first must link each of them to a constitutional violation. He must address each defendant separately, i.e., Doe 1, Doe 2, Doe 3, etc., and must set forth facts describing how each Doe defendant personally participated in the violation of his constitutional rights. He may not simply allege liability on the part of a group of Defendants, as he has done here.

Plaintiff will be given leave to amend.

    **B.    Linkage**

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act

to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

As stated above, Plaintiff has not identified how any individual CSR Reps or CP-R Reps participated in the alleged constitutional violations. Accordingly, he has failed to adequately link them to his claims.

Plaintiff alleges that Warden Davey failed to train subordinates and willfully turned a blind eye to constitutional violations. These conclusory statements are insufficient to link Defendant Davey to a constitutional violation. Iqbal, 556 U.S. at 678.

### C. Official Capacity Claims

Plaintiff's official capacity claims for damages against the Defendants are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169-70 (1985) (Eleventh Amendment immunity from damages in federal court action against state remains in effect when state officials are sued for damages in their official capacity). Plaintiff's request for injunctive relief against the Defendants remains intact, Austin v. State Indus. Ins. Sys., 939 F.2d 676, 680 (9th Cir. 1991), as does Plaintiff's request for damages against the Defendants in their individual capacities, see Hafer v. Melo, 502 U.S. 25, 31 (1991) (Eleventh Amendment does not bar suits seeking to impose individual liability upon a government official for actions taken under color of state law).

### D. First Amendment

#### 1. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Plaintiff alleges that Defendants retaliated against him for filing a 602 by cancelling his accelerated transfer. However, he also states that the 602 itself challenged Defendants' transfer decision. Thus, it appears that Defendants responded to Plaintiff's complaint by cancelling the very decision Plaintiff complained of. In light of

these circumstances, Plaintiff fails to allege that Defendants took adverse action against him in this regard.

Plaintiff does not state a cognizable retaliation claim. He will be given leave to amend.

### 2. Freedom of Speech and Expression

Plaintiff alleges that Defendants violated his right to "Free Speech/Expression." The Court is unable to discern any basis for such a claim in Plaintiff's complaint aside from his retaliation claim, discussed above. Accordingly, the Court will not discuss this claim further.

### E. Eighth Amendment

#### 1. Inadequate Medical Care

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

"Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); accord Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).

Deliberate indifference, which is the subjective element of an Eighth Amendment claim, is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm, 680 F.3d at 1122. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1977); Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122.

Where a prisoner alleges deliberate indifference based on a delay in medical treatment, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1060a; Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). Delay which does not cause harm is insufficient to state a claim of deliberate medical indifference. Shapley, 766 F.2d at 407 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Finally, "[a] difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff alleges that he had a broken arm, that he suffered a month-long delay in obtaining surgery, and that he was provided inadequate medication. He does not link

9

any of these allegations to any named Defendant. Thus, he has not alleged that any particular Defendant was deliberately indifferent to his serious medical need. He will be given leave to amend.

If Plaintiff chooses to amend, he must allege facts to show that a named Defendant was aware of his serious medical need and the need for treatment, but purposefully disregarded that need with deliberate indifference to a risk of harm to Plaintiff's health.

### 2. Conditions of Confinement

Plaintiff alleges that Defendants' conduct constituted cruel and unusual punishment. The basis for this allegation is unclear.

A conditions of confinement claim has both an objective and a subjective component. See Farmer, 511 U.S. at 834. "First, the deprivation alleged must be . . . sufficiently serious," and must "result in the denial of the minimal civilized measure of life's necessities." Id. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). Second, the prison official must have acted with "deliberate indifference" to a substantial risk of serious harm to the inmate. Farmer, 511 U.S. at 834. "Mere negligence is not sufficient to establish liability." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Rather, a plaintiff must set forth facts to show that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Plaintiff has not alleged any facts to suggest that his confinement in AdSeg, in and of itself, creates a serious risk to his health or safety. Plaintiff does allege that his life is in danger because his housing in AdSeg has generated suspicion amongst other inmates. However, Plaintiff's beliefs in this regard appear to be based entirely on speculation. He alleges no facts to support this contention. Moreover, even if he did, he has not alleged that any Defendant was aware of this risk but disregarded it.

Plaintiff fails to state a conditions of confinement claim. He will be given leave to amend.

### F.     Fourteenth Amendment

#### 1.     Procedural Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See id. at 466-68. Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Assignment to the SHU is an administrative measure rather than a disciplinary measure and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). To satisfy due process, the administrative segregation process must include an informal non-adversary hearing within a reasonable time after being segregated, notice of the charges or the reasons segregation is being considered, and an opportunity for the inmate to present his views. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir.1986), overruled on other grounds by Sandin v. Connor, 515 U.S. 472, 481 (1995).

The administrative determination also must meet the "some evidence" standard of Superintendent v. Hill, 472 U.S. 445, 455 (1985). Bruce, 351 F.3d at 1287-88. Because the standard for "some evidence" is not high, a court need only decide whether there is any evidence at all that could support the prison officials' administrative decisions. Id. at 1287-88. A reviewing court does not "examine the entire record, independently assess witness credibility, or reweigh the evidence." Id. at 1287. However, the evidence

supporting the administrative determination must bear "some indicia of reliability." <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987) (citations omitted). California regulations requiring three source items for gang validation do not dictate the outcome of the federal due process analysis. A single piece of evidence that has sufficient indicia of reliability can be sufficient to meet the "some evidence" standard. <u>Bruce</u>, 351 F.3d at 1288.

With respect to retention in administrative segregation, prison officials must engage in some sort of periodic review of the confinement of such inmates. <u>Toussaint</u>, 801 F.2d at 1100-01. Annual reviews do not sufficiently protect the prisoner's liberty interest. <u>Id.</u>

Plaintiff alleges no facts with regard to the procedures leading to his placement or retention in administrative segregation. He alleges no facts to suggest that his due process rights were violated. Plaintiff's conclusory allegation that the allegations against him were false is insufficient to state a claim. Plaintiff will be given leave to amend.

### 2. Substantive Due Process

Plaintiff claims that Defendants' conduct violated his substantive due process rights.

If a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 843 (1998) (quotation marks and citation omitted). Here, Plaintiff's claims appear to fall within the rubric of the Eighth Amendment's prohibition against Cruel and Unusual Punishment and the Fourteenth Amendment's procedural due process guarantee.

### G. California Constitution

Plaintiff alleges that Defendants' conduct violates Article 5 of the California Constitution. However, Article 5 concerns the executive branch of government, i.e., the Governor's office, and has no applicability here.

**H.   "Coleman Act"**

Plaintiff alleges that Defendants' conduct violates the "Coleman Act." Presumably, this is a reference to Coleman v. Schwarzenegger, 2:90-cv-00520-LKK-JFM (E.D. Cal.), a federal class action concerning prison mental health care services.  Plaintiff may not pursue any claims in this action based on an alleged violation of court orders issued in Coleman. A violation of a court order in Coleman does not provide Plaintiff with an independent claim for relief in this action.  See Cagle v. Sutherland, 334 F.3d 980, 986-87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). To the extent that plaintiff wishes to seek assistance that he believes is due pursuant to the Coleman plan, plaintiff "must pursue his request via the consent decree or through class counsel." Crayton v. Terhune, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002). Plaintiff may not sue for damages in this action solely on the basis that defendants allegedly violated the remedial plan.

**I.   Data Breach**

Plaintiff's allegations regarding a data breach are unrelated to his other claims and appear to be directed at individuals other than the named Defendants. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 653 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the

other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff's inclusion in this action of claims regarding a data breach fails to comply with the rules regarding joinder of claims. Plaintiff may not pursue unrelated claims against unrelated defendants in this action.[2] If Plaintiff again sets forth unrelated claims which violate joinder rules, the Court may dismiss this action for failure to comply with Court orders.

**V.   Conclusion and Order**

Plaintiff's complaint does not state a cognizable claim for relief. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an

---

[2] Plaintiff's claims regarding a data breach arose in 2016. The allegations thus indicate that Plaintiff will not be prejudiced by the statute of limitations in bringing a separate suit based on these allegations. See Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015).

original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted;
2. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint, filed June 8, 2016;
3. Within thirty (30) days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and
4. If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, the Court will recommend this action will be dismissed, with prejudice, for failure to comply with a court order and failure to state a claim, subject to the "three strikes" provision set forth in in 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated:   August 9, 2016                    /s/ *Michael J. Seng*
                                           UNITED STATES MAGISTRATE JUDGE

15